**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

ARROW ELECTRONICS, INC.,        )        3:10-cv-00175-ECR-VPC
                                )
        Plaintiff,              )
                                )
vs.                             )        **Order**
                                )
NIGHT OPERATIONS SYSTEMS, INC., )
                                )
        Defendant.              )
                                )
_____)

     This case arises out of a dispute over payment for commercial goods.  Now pending is a motion for summary judgment (#23) filed by Plaintiff.  The motion is ripe, and we now rule on it.


                         **I. Background**

     Plaintiff Arrow Electronics, Inc. ("Arrow" or "Plaintiff") is a seller of electronic and computer products.  (Memo. in Support of Mot. for Summary Judgment ("Memo for MSJ") at 2 (#24).)  Plaintiff and Defendant Night Operations Systems, Inc. ("Night Operations" or "Defendant") executed a credit agreement allowing Night Operations to purchase electronic products from Arrow on credit.  (Christensen Decl. Ex. 1 at 1 (#24-1).)  Between August 2009 and November 2009, Night Operations ordered, and Arrow delivered, products subject to the terms and conditions on the invoices.  (Christensen Decl. Ex. 2 (#24-1).)  It is undisputed that Night Operations did not pay for

1  the products that were ordered and delivered, or return them to
2  Arrow.  (Opp. to Mot. for Summary Judgment ("Opp.") at 5 (27).)
3  Night Operations alleges, however, that Arrow's products were non-
4  conforming and delivered four weeks late.  (Id. at 4-5.)

5      On March 29, 2010, Arrow filed a complaint (#1) against Night
6  Operations.  On April 23, 2010, Arrow filed a motion for entry of
7  default (#7).  On April 27, 2010, the Clerk entered default (#9) as
8  to Night Operations.  On the same date, Night Operations filed an
9  answer (#10) to the complaint (#1).  On June 7, 2010, Night
10  Operations filed a motion to set aside default (#16), and on August
11  6, 2010, Magistrate Judge Cooke granted (#22) the motion to set
12  aside default (#16).  On September 14, 2010, Arrow filed a motion
13  for summary judgment (#23) along with a memorandum (#24) in support
14  of the motion.  On October 15, 2010, Night Operations filed its
15  opposition (#26), and on October 22, 2010, Arrow replied (#28).
16  Oral argument was held for the matter on June 22, 2011.

17

18                  **II. Standard of Review**

19      Summary judgment allows courts to avoid unnecessary trials
20  where no material factual dispute exists.  N.W. Motorcycle Ass'n v.
21  U.S. Dep't of Agric., 18 F.3d 1468, 1471 (9th Cir. 1994).  The court
22  must view the evidence and the inferences arising therefrom in the
23  light most favorable to the nonmoving party, Bagdadi v. Nazar, 84
24  F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment
25  where no genuine issues of material fact remain in dispute and the
26  moving party is entitled to judgment as a matter of law.  FED. R.
27  CIV. P. 56(c).  Judgment as a matter of law is appropriate where

28                              2

there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted.  <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  Although the parties may submit evidence in an inadmissible form — namely, depositions, admissions, interrogatory answers, and affidavits — only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  FED. R. CIV. P. 56(c); <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof. <u>Anderson</u>, 477 U.S. at 248.  Summary judgment is not proper if material factual issues exist for trial.

3

1  B.C. v. Plumas Unified Sch. Dist., 192 F.3d 1260, 1264 (9th Cir.

2  1999).  "As to materiality, only disputes over facts that might

3  affect the outcome of the suit under the governing law will properly

4  preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

5  Disputes over irrelevant or unnecessary facts should not be

6  considered.  Id.  Where there is a complete failure of proof on an

7  essential element of the nonmoving party's case, all other facts

8  become immaterial, and the moving party is entitled to judgment as a

9  matter of law.  Celotex, 477 U.S. at 323.  Summary judgment is not a

10 disfavored procedural shortcut, but rather an integral part of the

11 federal rules as a whole.  Id.

12

13                          **III. Discussion**

14    **A. Legal Standard**

15    According to the terms and conditions of sale ("Terms and

16 Conditions") attached to the invoices, this case is governed by New

17 York law.  (Christensen Decl. Ex. 4 (#24-3).)  In New York, pursuant

18 to Uniform Commercial Code ("UCC") § 2-601, "if the goods or the

19 tender of delivery fail in any way to conform to the contract," a

20 breach has occurred and a buyer may reject the goods and cease

21 performing under the contract.  Night Operations undisputedly

22 accepted the goods, but such acceptance, according to Night

23 Operations, was under protest and due to its need for the products

24 despite their non-conformity and delayed delivery.  Night Operations

25 also alleges that it was fraudulently induced to enter into the

26 contract because Arrow represented that the delivery would be on

27 time with conforming goods, and Night Operations was also induced

28                                 4

into buying more parts than it required because of alleged misrepresentations by Arrow.

"While the buyer may no longer reject goods after acceptance occurs, all other Code remedies for breach and non-conformity are available." Phone Card America, Inc. v. Quality Discount Equipment Sellers, LLC, 910 N.Y.S.2d 408, 2010 WL 1576833 at *3 (N.Y.Sup. April 20, 2010) (citing UCC § 2-607). Under the UCC, "a buyer may cross-claim for damages but also seek diminution or extinction of the purchase price." Murray Hill Apparel, Inc. v. Yunsa, 856 N.Y.S.2d 499, 2008 WL 123795 (N.Y. City Civ. Ct. Jan. 14 2008). "[A] buyer may defeat or diminish a seller's substantive action for goods sold and delivered by interposing a valid counterclaim for breach of the underlying sales agreement." Hooper Handling, Inc. v. Jonmark Corp., 701 N.Y.S.2d 577, 578 (N.Y.A.D. 4 Dept. 1999) (quoting Created Gemstones, Inc. v. Union Carbide Corp., 391 N.E.2d 987, 989 (N.Y. 1979)). When a defendant does so and raises "a significant issue regarding the nonconformity of the goods shipped to it by plaintiff" such an issue could "significantly diminish or negate plaintiff's recovery." Hooper Handling, 701 N.Y.S.2d at 578.

**B. Material Issues of Fact**

1. Minimum Order Requirement

Night Operations alleges that Arrow falsely represented that there was a required minimum order for the parts it required. Arrow denies that the representation was false, and claims that even if it were false, the issue is irrelevant to whether Arrow breached the contract, as any such fraud could only speak to a problem in the formation of the contract. Arrow is correct. Regardless of whether

5

1  or not there was a required minimum order, Night Operations agreed
2  to purchase the minimum amount, and entered into a contract to do
3  so.   This issue does not excuse Night Operations from paying the
4  agreed-upon purchase price.

5      Night Operations' argument appears to be that it was "misled
6  and/or induced to enter into the Agreement by misrepresentation
7  and/or fraud" by the minimum order requirement, which changed the
8  price and caused a delay in the manufacture and delivery of the
9  parts.  (Opp. at 6 (#27).)  According to Night Operations, this
10 "constituted a breach/lack of performance by Plaintiff" and
11 "constitutes a breach of the duty of good faith and fair dealing by
12 Plaintiff."  (Id.)  We are unable to see the fraud in this act, even
13 if Arrow did not normally have a minimum order requirement, and
14 imposed one only on Night Operations.  Night Operations argues that
15 it needed fewer than the minimum requirement, and therefore was
16 falsely induced into buying too many.  However, a statement that a
17 company requires a certain minimum order for a certain part does not
18 appear to be false inducement, as it does not promise any false
19 benefit to induce a purchaser into buying.  At that stage of
20 negotiations, Night Operations was still free to walk away from the
21 bargain and buy from a seller with no minimum requirement.  Instead,
22 Night Operations, knowing that Arrow required a minimum order that
23 did not fit Night Operations' needs, entered into a purchase
24 agreement to purchase and pay for that minimum order.  Whether or
25 not there truly is a minimum order requirement under Arrow's
26 policies is irrelevant to the issue of whether Night Operations must
27 pay for the parts that it ordered and accepted and agreed to pay

28                                6

for, and therefore we disagree with Night Operations that there is

material issue of fact regarding whether Arrow fraudulently induced

Night Operations into entering into a purchase agreement.

## 2. Late Delivery

There is a dispute concerning the agreed-upon delivery date.

Night Operations alleges that it required a delivery within a

certain timeframe due to an urgent order from the United States

Department of Defense.  According to Night Operations, Arrow assured

it that Arrow would modify current inventory to meet Night

Operations' functional requirements and deliver the products within

the requested timeframe.  It is not until later, after it was too

late for Night Operations to find a substitute supplier, that Arrow

allegedly came to Night Operations and announced that because the

products were being made from scratch, and because of component

material shortages, Arrow's delivery would be delayed past Night

Operations' critical deadline.  Night Operations then had to accept

the products as-is, and had to modify them in-house to meet their

functional requirements at additional cost.  Arrow claims that it

communicated that the parts, which had to be customized to Night

Operations' specifications, had a lead time of 12-14 weeks before

delivery.

Night Operations' argument regarding a delayed delivery date

fails because the purchase order agreement specifies a final

delivery date of November 22, 2009.  (Moore Decl. Ex. 4 at 16 (#24-

5).)  At the hearing held on June 22, 2011, counsel for Arrow

clarified that the purchase order agreement pertained to the two of

the thirty-one invoices that Night Operations alleges involved late

7

1 and non-conforming delivery.  Night Operations did not contest that
2 statement, and therefore we assume that the purchase order agreement
3 and its terms apply to the two invoices at issue here.

4      Night Operations signed the purchase order agreement, which
5 specified that "[i]f a final delivery date is specified on Exhibit
6 A, you agree to accept delivery of the entire quantity of products
7 on or before that date or as soon thereafter as we are able to
8 deliver such products."  Id.  The allegedly delayed parts were
9 delivered on October 29, 2009 and November 10, 2009, well before the
10 final delivery date of November 22, 2009.  Night Operations' claim
11 that the unspecified timeframe within which it required the products
12 was a "time is of the essence inconsistent additional term"
13 contradicts the purchase order agreement which explicitly stated a
14 final delivery date of November 22, 2009.  See Kabbalah Jeans, Inc.
15 v. CN USA Intern, Corp., 907 N.Y.S.2d 438, 2010 WL 1136511 at *5
16 (N.Y. Sup. Ct. Mar. 24, 2010).  The parol evidence rule in UCC § 2-
17 202 "bars any such proof of an alleged oral agreement between the
18 parties that would vary the terms of the purchase orders, which were
19 the final written expression of the parties' contract."  Id.; see
20 also Kay-Bee Toys Corp. v. Winston Sports Corp., 625 N.Y.S.2d 208,
21 210 (N.Y. App. Div. 1995).

22      Night Operations contends that there was an entirely new
23 contract that abrogated the old contract.  We do not agree.  There
24 is no evidence of a new contract.  The affidavits merely support the
25 possible existence of oral terms, inconsistent with the purchase
26 order agreement.  The rule on parol evidence in New York prohibits
27 such evidence when the parties sign a purchase order agreement.

28                                      8

1  Kay-Bee Toys, 625 N.Y.S.2d at 210.  An affidavit also suggests that
2  Arrow allegedly admitted to the power components being delayed.
3  (Murphy Decl. Ex. 1, at 4 (#27-1).)  However, as noted above, the
4  components were ultimately delivered before the final delivery date
5  specified on the purchase order agreement.  Night Operations does
6  not dispute that the purchase order agreement was signed by it, and
7  after any oral discussions regarding the terms of the purchase.
8  Night Operations does not allege that it made any objection to the
9  final delivery date included in the purchase order agreement.
10 Therefore, we cannot find that there is a material issue of fact
11 regarding late delivery of the products, when the purchase order
12 agreement stated a final delivery date later than the actual
13 delivery date of the products.

14             3. Delivery of Non-Conforming Goods

15     Night Operations finally alleges that Arrow breached the
16 contract by delivering non-conforming goods that Night Operations
17 was forced to modify in-house due to its strict deadlines at
18 additional cost.  The non-conforming goods were power components
19 delivered on October 29, 2009, and November 10, 2009, concerning
20 only two of the thirty-three unpaid invoices at issue in this case.
21 The power components were the subject of Invoice Nos. 6107680 and
22 6189776.  While Arrow insists that acceptance of the goods requires
23 Night Operations to pay the agreed-upon purchase price, Arrow is
24 incorrect.  Acceptance of the goods does not bar a buyer from
25 bringing suit for damages or to reduce the purchase price when the
26 goods were non-conforming.  Phone Card America, 2010 WL 1576833 at
27 *3.  While UCC § 2-719(1)(a) "permits an agreement to limit a

28                                    9

1   buyer's remedies 'to repair and replacement of non-conforming goods

2   or parts,' UCC 2-719(2) provides that '[w]here circumstances cause

3   [such] an exclusive or limited remedy to fail of its essential

4   purpose, remedy may be had as provided in this chapter,'" including

5   such remedies as "cover, rejection, revocation, and the recovery of

6   compensatory, consequential, and incidental damages, pursuant to UCC

7   §§ 2-711, 2-714, and 2-715." New York Trans Harbor LLC v. Derecktor

8   Shipyards Conn., LLC, 841 N.Y.S.2d 821, 2007 WL 1532293 at *8 (N.Y.

9   Sup. 2007) (citations omitted).  Under UCC §§ 2-714 and 2-715, after

10  non-conforming goods have been accepted, a buyer may recover

11  incidental damages such as any "reasonable expense incident to the

12  [seller's] delay or other breach." Id. at *9.  In this case, while

13  Night Operations did accept the goods, it has demonstrated that

14  there is a material issue of fact over whether Arrow breached the

15  contract by delivering non-conforming goods, and therefore summary

16  judgment is not warranted.

17      We note that Night Operations has not filed a counter-claim for

18  damages.  Night Operations, may, however, be entitled to seek

19  reduction of the agreed-upon purchase price if able to prove damages

20  at trial.

21      The material issue of fact only concerns Invoices No. 6107680

22  and 6189776.  (Moore Decl. Ex. 5 (#24-5).)  Night Operations has not

23  alleged that any other goods were non-conforming.  Because Night

24  Operations has failed to raise any issue of material fact regarding

25  the remaining thirty-one invoices, summary judgment shall be granted

26  on those invoices.

27  ////

28

1              4. Breach of the Covenant of Good Faith and Fair Dealing

2          Night Operations also alleges that there is a material dispute

3   regarding whether Arrow's conduct satisfied the duty "to deal fairly

4   and in good faith with Defendant."  (Opp. at 12 (#27).)  It is

5   unclear whether Night Operations seeks to counterclaim for a breach

6   of the covenant of good faith and fair dealing against Arrow, or

7   simply to reinforce Night Operations' other claim that Arrow

8   breaches its obligations under the contract.  (Id.)  Under New York

9   law, "[a] claim for breach of [the duty of good faith and fair

10  dealing], however, will be dismissed as redundant where the conduct

11  allegedly violating the implied covenant is a predicate also for a

12  claim for breach of an express provision of the contract."  Kamfar

13  v. New World Restaurant Group, Inc., 347 F. Supp. 2d 38, 52

14  (S.D.N.Y. 2004) (quoting Nat'l Westminster Bank Plc v. Grant

15  Prideco, Inc., 261 F. Supp. 2d 265, 274-75 (S.D.N.Y. 2003)).

16  Therefore, insofar as Night Operations is alleging that it has a

17  separate claim or defense for breach of the covenant of good faith

18  and fair dealing, New York law does not recognize such a claim when

19  the conduct is governed by contract.

20         Night Operations objects to Arrow's conduct regarding late

21  delivery and nonconforming parts.  Because this conduct is covered

22  by the contract between the parties to purchase and deliver

23  products, we do not believe that Night Operations may maintain such

24  a defense separately from any defense that Arrow breached its

25  obligations under the contract.

26  ////

27  ////

28                                    11

## C. Night Operations' Affirmative Defenses

In addition to its claim that Arrow breached the contract by delivering non-conforming goods, Night Operations sets out a number of affirmative defenses in its answer (#10) that Arrow claims must be dismissed.

As an initial matter, we note that Night Operations' answer (#10) failed to plead any specific facts or allegations to support its affirmative defenses.  Instead, Night Operations included a list of defenses such as the statute of frauds, waiver, laches, unclean hands, estoppel, and accord and satisfaction.  Arrow alleges that Night Operations' answer (#10) is insufficient to plead affirmative defenses under the requirements of Rule 8(c).  However, Rule 8(c) requires only that a party "must affirmatively state any avoidance or affirmative defense" and does not provide how much detail a party must provide in stating an affirmative defense.  FED. R. CIV. P. 8(c). A simple allegation that a plaintiff's claims are barred by a certain affirmative defense is adequate, unless the pleading falls under the category of fraud, mistake, or denial of conditions precedent.  See, e.g., Wyshak v. City National Bank, 607 F.2d 824, 827 (9th Cir. 1979); Smith v. Wal-Mart Stores, No. C 06-2069 SBA, 2006 WL 2711468 at *12 (N.D. Cal. Sep. 20, 2006).

The parties do not address the issue of whether Twombly and Iqbal, the recent Supreme Court cases requiring more than bare assertions in a complaint, apply to affirmative defenses contained in an answer.  Appellate courts have not ruled on this issue, and district courts are split.  See, e.g., Falley v. Friends University, No. 10-1423-CM, 2011 WL 1429956 at *4 (D. Kan. Apr. 14, 2011)

12

1  (concluding that the pleading standards of <u>Twombly</u> and <u>Iqbal</u> should
2  be limited to complaints and not extended to affirmative defenses);
3  <u>Hayne v. Green Ford Sales, Inc.</u>, 263 F.R.D. 647 at 650 (D. Kan.
4  2009). However, because the motion before the Court is one for
5  summary judgment, we must consider whether Night Operations has
6  produced affirmative evidence and specific facts in support of its
7  affirmative defenses sufficient to defeat a motion for summary
8  judgment, rather than merely whether Night Operations' pleadings are
9  sufficient to defeat a motion to strike under Federal Rule of Civil
10 Procedure 12(f), which was not filed in this case. <u>See</u> <u>Benavidez v.</u>
11 <u>Gunnell</u>, 722 F.2d 615, 617 (10th Cir. 1983).

12          1. Statute of Limitations

13     Night Operations' statute of limitations defense fails as a
14 matter of law because New York provides a six-year statute of
15 limitations for actions founded upon a contract. N.Y. C.P.L.R. §
16 213. The oldest invoice became due on September 11, 2009. Arrow
17 filed its complaint on March 29, 2010.

18          2. Statute of Frauds

19     Night Operations' statute of frauds defense also fails because
20 the sales here were governed by the invoices and purchase order
21 agreement.

22          <u>3. Waiver, Laches, Unclean Hands, Estoppel, and Accord and</u>
23 <u>Satisfaction</u>

24     Night Operations' barebones pleading becomes problematic when
25 considering its remaining affirmative defenses. Because neither the
26 answer, nor the opposition to the motion for summary judgment,
27 contains any specific allegations relating to these defenses, we are

28                                  13

unable to evaluate the sufficiency of these defenses.  While a short statement of an affirmative defense is generally sufficient under Rule 8(c), Night Operations' method of pleading these defenses does not give fair notice of the basis of the defenses to Arrow or to the Court.  Furthermore, because the motion under consideration here is a motion for summary judgment rather than a motion to strike or to dismiss, Night Operations, as the party with the burden of proof on affirmative defenses, may not merely "rest upon the allegations of [its] pleadings but must set forth specific facts showing that there is a genuine issue for trial."  See, e.g., Benavidez, 722 F.2d at 617; Midwest Petroleum Co. v. American Petrofina, Inc., 603 F.Supp. 1099, 1109 (E.D. Mo. 1985).

### D. Attorney's fees and Costs

Arrow further argues that under the Terms and Conditions, the credit application signed by Night Operations, and applicable law, Arrow is entitled to collect the costs and attorney's fees incurred to collect the amounts due under the invoices.  (Memo for MSJ at 12 (#24).)  Because there exist issues of material fact sufficient to defeat the motion for summary judgment and the case remains open, we decline to award any costs or fees at this time.

### IV. Conclusion

Arrow's motion for summary judgment (#23) will be granted in part and denied in part.  Arrow is not entitled to summary judgment on its claims for breach of contract, quantum meruit, account, and promissory estoppel because there exists a genuine issue of material fact regarding whether Arrow delivered non-conforming goods that

14

caused damages to Night Operations in relation to Invoices Nos. 6107680 and 6189776.  Night Operations' acceptance of those goods does not bar Night Operations from seeking damages or a reduction of the purchase price.  Arrow is entitled, however, to summary judgment on the remaining invoices because Night Operations has failed to raise any issue of material fact concerning the remaining goods.

Night Operations' affirmative defenses of statute of limitations and statute of frauds fail as a matter of law and must be dismissed.  Night Operations' affirmative defenses of waiver, laches, unclean hands, estoppel, and accord and satisfaction fail to meet the specific pleading requirements of giving fair notice to Arrow, and must be dismissed on that basis, and also because Night Operations failed to set forth any specific facts showing that there is a genuine issue for trial on those affirmative defenses.  Night Operations' claim of a breach of the covenant of good faith and fair dealing must be dismissed because New York law does not recognize such a cause of action separate from a breach of contract claim when the conduct is governed by a provision in the contract.

Arrow's request for attorney's fees and costs is denied without prejudice because the action will proceed on the issue of whether Arrow delivered non-conforming goods in breach of the contract on two of the thirty-three invoices.

**IT IS, THEREFORE, HEREBY ORDERED** that Arrow's motion for summary judgment (#23) is **GRANTED IN PART AND DENIED IN PART** on the following basis: Arrow is not entitled to summary judgment on its claims relating to Invoices 6107680 and 6189776, but is entitled to

1  summary judgment on the remaining invoices.  Night Operations'
2  affirmative defenses are dismissed.  The request for attorney's fees
3  and costs is denied.

4

5  **It IS FURTHER ORDERED** that Arrow shall submit, within twenty-
6  eight (28) days after the date of filing of this Order, a proposed
7  order determining the amount of damages relating to the thirty-one
8  invoices upon which summary judgment was granted.  Night Operations
9  may file objections within fourteen (14) days after the proposed
10  order is filed, and Arrow may reply in support of its proposed order
11  within seven (7) days after Night Operations files its objections.

12

13

14  DATED: July 1,2011.

15

16                                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28
                                16